# EXHIBIT 01

Electronically Filed
Kinnis Williams, Sr.
Circuit Clerk
Nora Sternau
23LA0139
St. Clair County
2/8/2023 4:21 PM
21397646

## IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT
## ST. CLAIR COUNTY, ILLINOIS

Andrea Rucker,                                      )
                                                    )
      Plaintiff,                              )
                                                    )
v.                                                  )   Case No. ~~XXXXX 2023 L~~ 23LA0139
                                                    )
Monsanto Company,                                   )
Bayer AG,                                           )
Solutia Inc., Individually and as successor         )
to Monsanto Company,                                )
Eastman Chemical Company, Individually              )
and as successor to Solutia Inc.,                   )
Pharmacia, LLC,                                     )
Pfizer, Inc.,                                       )
Afton Chemical Corporation, *f/k/a* Ethyl           )
Petroleum Additives, Inc.,                          )
Cerro Flow Products, LLC,                           )
Exxon Mobil Corporation,                            )
Nalco Company, LLC, Individually and as             )
successor to Industrial Bio-Test Laboratories,      )
Alton & Southern Railway,                           )
                                                    )
      Defendants.                             )

## COMPLAINT

Plaintiff, Andres Rucker ("Plaintiff"), through Ted N. Gianaris and Joshua A. Edelson of

Gianaris Trial Lawyers, LLC, states and alleges as follows for her Complaint against the

Defendants named herein:

### INTRODUCTION

Andrea Rucker was born and raised, and has worked as a mailman, in and around areas of

East St. Louis, St. Clair County, Illinois that are in close proximity to all the named Defendants'

facilities, which is considered to be one of the most toxic communities in the United States. Having

lived and worked within this area her entire life, Andrea Rucker was exposed to excessive,

unhealthy, and unnecessary levels of toxic chemicals, including benzene, PCBs, TCE, and other

toxic chemicals that were released, excessively, into the air, soil, and/or groundwater in and around
her homes, adjoining neighborhoods, places of work, and community. These extreme exposures
from all the named Defendants throughout her life caused her to develop Multiple Myeloma and
Colon Cancer. The named Defendants have all known of the presence of their excessive pollution,
a toxic plume, toxic waste, and the corresponding hazards to those living and working in close
proximity to their facilities for many years. None of the named Defendants have, or have done,
anything substantial to warn, stop, clean up or, in any way, remediate such hazards or to stop or
mitigate the detrimental effects such hazards have had, and continue to have on, Andrea Rucker
and the surrounding community and surrounding community of color. The time has now come for
the named Defendants to take responsibility for the extreme and unnecessary hazards each created
and the life-long damages, injuries, and pain it has, and will continue to, cause Andrea Rucker.

### PARTIES, JURISDICTION & VENUE

1.      Plaintiff is now, and at all relevant times herein, a resident and citizen of the State
of East St. Louis, St. Clair County, Illinois.

2.      Defendant, Bayer AG ("Bayer"), is a foreign corporation, incorporated in the state
of Delaware and doing business within the State of Illinois.

3.      Defendant, Monsanto Company ("Monsanto"), is a foreign corporation,
incorporated in the State of Delaware and doing business within the State of Illinois.

4.      Defendant, Solutia Inc., Individually and as successor to Monsanto Company
("Solutia"), is a foreign corporation, incorporated in the State of Delaware and doing business
within the State of Illinois.

5.    Defendant, Eastman Chemical Company, Individually and as successor to Solutia

Inc. ("Eastman Chemical"), is a foreign corporation, incorporated in the State of Delaware, and

doing business within the State of Illinois.

6.    Defendant, Pharmacia, LLC ("Pharmacia"), is a foreign corporation, incorporated

in the State of Delaware and doing business within the State of Illinois.

7.    Defendant, Pfizer, Inc. ("Pfizer"), is a foreign corporation incorporated in the State

of Delaware and doing business within State of Illinois.

8.    Defendant, Afton Chemical Corporation, formerly known as Ethyl Petroleum

Additives, Inc. ("Afton"), is a foreign corporation incorporated in the State of Delaware and doing

business within the State of Illinois.

9.    Defendant, Cerro Flow Products, LLC ("Cerro"), is a foreign corporation

established under the laws of the State of Delaware and with its principal place of business located

in St. Clair County, Illinois.

10.    Defendant, Exxon Mobil Corporation ("Exxon"), is a foreign corporation

established under the laws of New Jersey and doing business in the State of Illinois.

11.    Defendant, Nalco Company, LLC, Individually and as successor to Industrial Bio-

Test Laboratories ("Nalco"), is a limited liability company established under the laws of the State

of Illinois, consisting of three members all located within the State of Illinois, and with a principal

place of business in Naperville, Cook County, Illinois.

12.    Defendant, Alton & Southern Railway ("A&S"), is an Illinois corporation,

organized and existing pursuant to Illinois law and with its principal place of business in St. Clair

County, Illinois.

13.    Defendants, Bayer, Monsanto, Solutia, Eastman Chemical, Pharmacia, Pfizer, Afton, Cerro, Exxon, and Nalco are referred to collectively as "Region Defendants" herein.

14.    Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution, this Court has personal jurisdiction over all Defendants, because each Defendant is either present or domiciled in the State of Illinois, such that requiring an appearance does not offend traditional notions of fair play and substantial justice. Moreover, Plaintiff was exposed to toxic chemicals, including but not limited to Benzene, or Benzene-containing products, polychlorinated biphenyls ("PCBs"), and Trichloroethylene ("TCE") within the State of Illinois and that originated within the State of Illinois, giving rise to specific jurisdiction against all Defendants in the State of Illinois.

15.    This Court has either general and/or specific personal jurisdiction over all Defendants, pursuant to and consistent with, 735 ILCS 5/2-209, and the United States and Illinois constitutional requirements of Due Process, in that all Defendants, individually or acting through their apparent agents, and:

    a.  Transacted business in the State of Illinois, 735 ILCS 5/2-209(a)(1); and/or,
    b.  Committed a tortious act within the State of Illinois, 735 ILCS 5/2-209(a)(2); and/or,
    c.  Owned, used, or possessed real estate situated in the State of Illinois, 735 ILCS 5/2-209(a)(3); and/or,
    d.  At all relevant time, it was foreseeable to each Defendant that its tortious acts and/or their transaction of business in the State of Illinois would have consequences such that all Defendants could reasonably foresee being hauled into Court in the State of Illinois; and,
    e.  Requiring Defendants to litigate this claim in the State of Illinois does not offend traditional notions of fair play and substantial justice and is permitted by the United States Constitution.

16.    There is no federal subject matter jurisdiction because there is no federal question raised and there is no complete diversity and/or some Defendants are residents of the State of Illinois.

17.    On February 9, 2021, Plaintiff was diagnosed with Multiple Myeloma from which she continues to suffer and require medical treatment, now and in the future. Also, sometime during January of 2023, Plaintiff was diagnosed with Colon Cancer from which she continues to suffer and require medical treatment, now and in the future.

18.    Plaintiff was born and has lived her entire life in close proximity to all Defendants' facilities located in East St. Louis/Sauget/Cahokia, St. Clair County, Illinois.

19.    Plaintiff has also worked as a mailman for many years in and around all Defendants' facilities located in East St. Louis/Sauget/Cahokia, St. Clair County, Illinois.

20.    While living and working as a mailman in and around all Defendants' facilities located in East St. Louis/Sauget/Cahokia, St. Clair County, Illinois, Plaintiff was constantly exposed to and inhaled, ingested, or otherwise absorbed Benzene fumes emanating from Benzene, certain Benzene-containing materials and products and other toxic chemicals known to cause or contribute to cause Multiple Myeloma and Colon Cancer from all Defendants' facilities within the County of St. Clair, State of Illinois, which were processed, managed, handled, produced, manufactured, sold, distributed, marketed, and/or otherwise used by all Defendants within the County of St. Clair, State of Illinois.

21.    Plaintiff was also exposed to and inhaled, ingested, or otherwise absorbed PCB fumes emanating from PCBs and certain PCB-containing materials and products, within the County of St. Clair, State of Illinois, which were processed, managed, handled, produced, manufactured, sold, distributed, marketed, and/or otherwise used by Defendants in the County of St. Clair, State of Illinois, which has been classified as a known human carcinogen, known to cause or contribute to cause Multiple Myeloma and Colon Cancer.

22.   According to the United States Environmental Protection Agency, a lifetime dose of one (1) milligram of PCBs is sufficient to cause cancer and other serious and life-threatening diseases. According to the World Health Organization, there is no safe level of exposure to PCBs.

23.   Plaintiff was also exposed to and inhaled, ingested, or otherwise absorbed Trichloroethylene fumes emanating from certain Trichloroethylene-containing materials and products, known to cause or contribute to cause Multiple Myeloma and Colon Cancer, within the County of St. Clair, State of Illinois, which were processed, managed, handled, produced, manufactured, sold, distributed, marketed, and/or otherwise used by Defendants in the County of St. Clair, State of Illinois.

24.   All Defendants are entities that caused, or contributed to cause, Plaintiff's Multiple Myeloma and Colon Cancer from Benzene and/or PCBs and/or Trichloroethylene and other toxic chemical exposure through their products, facilities, or operations within St. Clair County, Illinois or are parent companies, affiliates, subsidiaries, successors in interest, employees, contractors, sub-contractors, or other agents of al named Defendants, or their respective predecessors in interest.

25.   All Defendants are jointly and severally liable for injuries that they caused or contributed to cause to Plaintiff.

26.   Venue in this matter is proper in this Court pursuant to 735 ILCS 5/2-101 (1), in that, at all relevant times herein, Defendants were and are residents, for the purposes of 735 ILCS 5/2-102(a), of St. Clair County, Illinois in that each maintains a fixed place of business at which the affairs of the Defendant are conducted in furtherance of a these Defendants' corporate activities.

27.    Venue is also proper in this Court under 735 ILCS § 5/2-101(2) because St. Clair County is the county in which the actions or omissions, or some parts thereof, occurred and out of which Plaintiff's cause of action arose.

## FACTS

28.    Located just east of Saint Louis, Missouri, along the Mississippi River, in the County of St. Clair, in the State of Illinois, sit the three contiguous municipalities of the Village of Sauget, the City of East St. Louis, and the Village of Cahokia (collectively "Region").

29.    At the turn of the 20th Century, numerous industries and businesses dotted the landscape of the City of East St. Louis, providing jobs to thousands of East St. Louis citizens.

30.    In the first couple of decades of the 20th Century, in an effort to avoid regulations and taxes, business and industries began to depart the City of East of St. Louis, seeking haven in surrounding communities and, often, incorporating or establishing their own individual municipal form of government.

31.    Eventually the City of East of St. Louis became encircled by companies and industries that were able and willing to release toxic chemicals, including, among others, Benzene and PCBs, and polluted the water and soil without oversight or regulation.

32.    In 1926, in an effort to avoid governmental regulations, civic and social corporate responsibilities to the public, and taxes, Defendant Monsanto (and/or Defendant Bayer, and or Defendant Solutia, and/or Defendant Eastman Chemical, and/or Defendant Pharmacia) incorporated the Village of Monsanto, Illinois, in the County of St. Clair.

33.    Commonly referred to as a "company town," the social and economic existence, at least initially, of the Village of Monsanto was dominated by one company (Defendant

Monsanto, and/or Defendant Bayer and/or Defendant Solutia, and/or Defendant Eastman
Chemical, and/or Defendant Pharmacia) and/or one industry (chemical production).

34.     The Village of Monsanto, now known as the Village of Sauget ("Sauget"), is
situated on the relatively flat American Bottoms floodplain of the Mississippi River and is located
directly south of East St. Louis and directly north of Cahokia.

35.     Recognizing, in part, the financial benefits and advantages associated with
operating a business within Sauget, numerous chemical manufacturers, petroleum refiners, metal
refiners, and power generators soon relocated to Sauget, and an industrial mecca, free from even
rational regulations, was created.

36.     By 1929, Sauget was home to some of St. Louis Metropolitan Area's largest
companies, including, among others, Cahokia Power Plant, Darling & Co. Fertilizer, Lubrite
Refining (n/k/a ExxonMobil), Midwest Rubber, Sterling Steel Casting Co., and T.J. Moss. To this
day, industrial companies and industries continue to operate throughout Sauget.

37.     For decades, Defendants' facilities located in Sauget discharged untreated toxic
liquid wastes directly into the Mississippi River and caused thousands of gallons of toxic wastes
to be buried in unlined landfills and waste pits in and around Sauget, Illinois and elsewhere within
St. Clair County, Illinois.

38.     For decades, Defendants' utilized Benzene and PCBs. Many of the Benzene and
PCB releases at Defendants' facilities located in Sauget have commingled with other chemicals
into a single large toxic plume containing large amounts of Benzene and PCBs, among other toxic
contaminants:

  a.  The release of Benzene and PCBs by Defendants' facilities located in and
      around Sauget and St. Clair County, caused the toxic plume containing large
      amounts of Benzene and PCBs, and has resulted in widespread injury to ground

water and other natural resources throughout Sauget, East St. Louis, and the
Village of Cahokia.

b. The Benzene and PCB toxic plume has contaminated and injured the American
Bottoms aquifer, preventing cities like East St. Louis from using said
groundwater.

39.    Today, the Region is one of the most polluted and toxic communities in the United

States, suffering from extensive groundwater and soil contaminations containing such toxic

chemicals as Benzene, PCBs, chlorobenzene, toluene, phenol, dioxin, organic solvents, cadmium,

silver, selenium, xylene, and zinc.

40.    In connection with the aforementioned Region Defendants current or historic

ownership, operation, and/or maintenance of the refineries, terminals, storage facilities, industrial

processes, and/or other associated equipment/operations, as set forth herein, and in connection

with the aforementioned Region Defendants current, or historic, production of chemicals, or

products that employed chemical products, the aforementioned Region Defendants have caused,

or contributed to cause the release of dangerous, cancer-causing chemicals (carcinogens) into the

air, soil, sewer systems, drainage pipes, fields, surface and subsurface soil, ground, and

groundwater, and have created a vast, toxic, underground plume of Benzene, hydrocarbons, PCBs,

and volatile organic chemicals that sits under the Village of Sauget and expands into the City of

East St. Louis ("Toxic Plume").

41.    Thousands of pounds of Benzene, other Benzene-containing pollutants, PCBs, and

other contaminants were handled, managed, emitted, leaked, spilled, dumped, and otherwise

discharged into the air and surface/ground water (collectively "Releases") during the

aforementioned Region Defendants current or historic ownership, operation, and/or maintenance

of the industrial processes, terminals, refineries, storage facilities, and/or other associated

equipment/operations in or near the Region.

42.     Smokestack emissions, wind erosion, smoke from fires in the waste piles at the
Monsanto Facility and other airborne Releases at the Release Sites have caused the Substances to
spread to adjacent communities and be deposited onto the soils in those communities. Once the
Substances contaminated the soils of the adjacent communities, the Substances were continuously
entrained, re-suspended, and re-entrained into the atmosphere and environment of those
communities.

43.     Releases of Substances from the Release Sites have also contaminated nearby
waterways and groundwater, thereby spreading the contamination throughout the communities
adjacent to the Release Sites.

44.     Releases of Substances from the Release Sites have also caused the Substances to
be deposited on and within structures throughout the communities adjacent to the Release Sites
and have thereby caused those structures to become contaminated with Substances.

45.     Substances that were released from the Release Sites continue even to this day to
contaminate adjacent communities.

46.     The Releases have occurred continuously for more than eighty-five (85) years,
dating as far back as 1935.

47.     For decades, all Defendants have known or should have known about the health
risks and real property contamination caused by the Releases.

48.     For decades, the Region Defendants have actively concealed the health risks and
real property contamination caused by the Releases.

49.     One or more of the Region Defendants intentionally misled the public about the
dangerous and hazardous nature of the Substances that were being released from the Release Sites.
In this effort, they conspired with Nalco, to falsely certify that the Substances being released from

the Release Sites were not carcinogenic, despite empirical evidence to the contrary. Ultimately,

Nalco was at the center of one of the most far-reaching scandals in modern science, as

investigations conducted by the United States Environmental Protection Agency and the United

States Food and Drug Administration demonstrated that thousands of Nalco studies were

fraudulent.

50.     Cumulative or exposure to multiple chemicals refers specifically to combined

exposures to multiple chemicals via multiple exposure pathways (U.S. EPA, 2003) that affect a

single individual, such as Plaintiff.

51.     Most research has focused on the effect of exposure to one chemical, when, in

reality, chemical exposure often, as in this case, occurs to a mixture of chemicals in a variety of

different ways. Cumulative exposure refers to the sum of all exposures to multiple chemicals.

52.     When chemicals combine, they may have an additive or synergistic effect, when,

*e.g.*, the impact of two or more chemicals is equal to the sum of the impact of each chemicals

separate impact, this is an additive effect. However, when, *e.g.*, two or more chemicals together

create an effect that is greater than the sum of each chemical taken alone, there is a synergistic

effect.

53.     PCBs, Trichloroethylene, Benzene, and/or other toxic exposures within the

aforementioned area that Plaintiff lived and worked in are associated with the development of

Multiple Myeloma and Colon Cancer, among other diseases.

54.     Plaintiff was exposed to and inhaled, ingested, or otherwise absorbed PCBs,

Trichloroethylene, Benzene, and/or other toxic chemicals emanating from or from direct contact

with materials and products, while living and working around Region Defendants' facilities.

55.     As a direct and proximate result of Region Defendants' acts or omissions, Plaintiff
was caused to be exposed to, inhaled, ingested, had direct contact with, and/or otherwise absorbed
Benzene, PCBs, TCE and/or other known or suspected carcinogens, which have caused or
contributed to Plaintiff developing Multiple Myeloma and Colon Cancer. Plaintiff has been
compelled to expend and become liable for large sums of monies for hospital, medical,
pharmaceutical, and other health care services necessary for the treatment of her Benzene, PCB,
TCE and/or chemical carcinogen-related-disease and conditions, and to alleviate the pain,
suffering, mental anguish, and physical disability caused by her injury. Plaintiff has experienced
great physical pain and mental anguish as a result of said exposure, inhalation, ingestion and
absorption; that as a further result of her Benzene, PCB, TCE and/or chemical carcinogen induced
diseases and conditions, Plaintiff has a shortened life span; that as a further result of her Benzene,
PCB, TCE and/or chemical carcinogen induced diseases and conditions, Plaintiff has been
hindered and prevented from pursuing her normal course of employment, thereby losing large
sums of money which otherwise would have accrued to her.

## COUNT I – NEGLIGENCE
## *VS. REGION DEFENDANTS*

56.     Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

57.     Plaintiff was injured by the Region Defendants specifically as follows: Benzene,
Benzene-containing products, materials, or substances, PCBs, PCB-containing materials, or
substances, and/or other known or suspected carcinogens that Defendants (individually and/or
collectively) manufactured, employed in the process of manufacturing, or were "waste or by
products" associated with the Region Defendants manufacture of products, materials, chemicals,
or substances.

58.    Plaintiff developed Multiple Myeloma and Colon Cancer as the result of her exposure to the Region Defendants' defective and unreasonably dangerous products, Benzene, Benzene containing products or substances, PCBs, PCB-containing products, or substances, and/or known or suspected carcinogens, individually, and/or collectively used by the Region Defendants in the manufacturing processes of their products, which emanated or were released into the Region.

59.    The Region Defendants' products were, individually and/or collectively, defective and unreasonably dangerous at the time the Region Defendants products containing Benzene, PCBs, and/or known or suspected carcinogens "left the Region Defendants hands," and the Region Defendants knew or should have known of the defective and unreasonably dangerous condition of the Benzene, Benzene-containing products, materials or substances, PCBs, PCB-containing products, materials or substances, and/or known or suspected carcinogens used in the manufacture of the Region Defendants products, which emanated and were released into the Region.

60.    The Region Defendants knew or should have known that persons such as Plaintiff who lived and worked within a two-mile radius around the Region Defendants' facilities would expose such persons, including Plaintiff, to said defective and unreasonably dangerous chemicals, emissions, and toxic plume and, as such, cause her harm.

61.    The Region Defendants knew or should have known that while Plaintiff lived and worked in and around Region Defendants' facilities, as set forth herein, that Plaintiff would be exposed to, among other things, Benzene, Benzene-containing substances, and other volatile organic compounds, PCBs, DDT, Dioxins, cleaners, solvents and solvent-based fluids, and other known or suspected carcinogens, which were processed, produced, manufactured, sold, distributed, marketed, handled, disposed of, released through aeration, emissions, spillage, incomplete or ineffective incineration of PCBs, improper burning of contaminated waste, improper

discharge into surface waters and wastewater systems, and improper disposal and/or otherwise used by the Region Defendants.

62.     The Region Defendants, which were and still are engaged in the business of designing, researching, testing, processing, producing, manufacturing, selling, distributing, labelling and marketing various industrial chemicals and products, some of which contain Benzene PCBs, and other known or suspected carcinogens, knew or should have known that storing and disposing of such chemicals or materials, processing, producing, handling, releasing through aeration, emissions, spillage, incomplete or ineffective incineration of PCBs, improper burning of contaminated waste, improper discharging into surface waters and wastewater systems, and improper disposal by the Region Defendants within or around the its facilities located within St. Clair County, Illinois, would expose and have a deleterious effect on persons such as Plaintiff and as described in this Complaint.

63.     The Region Defendants knew or should have known that draining hazardous substances and chemicals, including, among others, Benzene, PCBs, other volatile organic compounds, semi-volatile organic compounds, metals, DDT, Dioxins, cleaners, solvents and other known /or suspected carcinogens into a nearby creek, burying thousands of gallons of toxic waste underground in unlined landfills and waste pits on and within a two-mile radius around their facilities in St. Clair County, Illinois, would expose persons such as persons Plaintiff, who lived and worked within such radius, to the deleterious effects of such chemicals and substances.

64.     The Region Defendants knew or should have known that when they released hazardous substances, including Benzene, Benzene -containing substances, PCBs, PCB containing substances, and/or other known or suspected carcinogens into the ground water and American Bottoms aquifer, thereby causing the ground water and aquifer to be contaminated, rendering the

water in and around this area hazardous to those who came into contact with it, that persons such

as Plaintiff on, in, and within a two-mile radius around their facilities would come into contact

with said water from time-to-time, and that such exposure would have a harmful and damaging

effect on Plaintiff, and others similarly situated.

65.    The Region Defendants knew or should have known that when they stored and/or

disposed of Benzene and Benzene-containing and/or PCBs, PCB-containing products, materials

or substances, and/or known or suspected carcinogens to be stored and/or disposed in the manner

that allowed Plaintiff to come into contact with said chemicals that such exposure would place

Plaintiff at grave risk of developing disease or injury.

66.    The Region Defendants knew or should have known that Benzene, PCBs, and other

cancer-causing contaminants had a toxic, poisonous, and highly deleterious effect upon the health

of the persons like Plaintiff, by inhaling, ingesting, or otherwise absorbing the Benzene, PCBs,

and/or other known or suspected carcinogens.

67.    At all relevant times, the Region Defendants knew or should have known that:

    a. Benzene and Benzene -containing products and pollutants are highly toxic and
       carcinogenic;
    b. PCBs and PCB-containing products and pollutants are highly toxic and
       carcinogenic;
    c. Chemicals and contaminants that are known and/or suspected to be carcinogens
       are highly toxic;
    d. Benzene and Benzene-containing products and pollutants, PCBs and PCB
       containing products and pollutants, and/or known and suspected carcinogenic
       products and pollutants should not be emitted, leaked, spilled, dumped, emitted,
       and/or otherwise discharged into the air and surface/ground water; and,
    e. If Benzene and Benzene-containing products and pollutants, PCBs and PCB
       containing products and pollutants, and/or known and suspected carcinogenic
       products and pollutants are released into the environment, sufficient warnings
       must be provided and effective remedial measures must be taken.

68.    Despite having the knowledge aforementioned, the Region Defendants negligently

constructed, maintained, managed, owned, and/or operated the chemical plants, terminals, storage

facilities, industrial processes, refineries and/or other associated equipment/operations, as set forth

herein, and utilized, employed, and incorporated Benzene, PCBs, and/or known or suspected

carcinogens into their product(s), and/or into their manufacturing processes, causing thousands of

pounds of pollutants to be negligently and/or intentionally emitted, leaked, spilled, dumped, and

otherwise discharged into the air, soil, and surface/ground water, on, in or within a two-mile radius

of their respective facilities and continued such negligent and/or intentional conduct over a series

of decades.

69.     The release of Benzene, PCBs, and/or known and/or suspected carcinogens from

these the industrial facilities, terminals, storage facilities, industrial processes, refineries, and/or

other associated equipment/operations, as set forth herein, and through the Region Defendants

utilization, employ, and incorporation of Benzene, PCBs, and/or known and/or suspected

carcinogens into its product(s), the Region Defendants caused or contributed to cause the Toxic

Plume which emanates out from the Region Defendants respective industrial facilities, thereby

causing Benzene-containing, PCB-containing, and/or known or suspected carcinogenic pollutants

to extend into and imperil the adjoining neighborhoods and communities of their facilities in the

Region, areas in which Plaintiff has lived and worked around her entire life.

70.     At all relevant times, the Region Defendants had a duty to exercise reasonable care

and caution for the safety, health, and welfare of persons such as Plaintiff who lived and worked

on and in close proximity to their facilities in the Region, where Benzene, PCBs, and/or known or

suspected carcinogens were being utilized, processed, stored, disposed of, or transported.

71.     The Region Defendants breached their duty to and failed to exercise ordinary care

in one or more of the following respects:

    a. The Region Defendants included Benzene, PCBs, and/or known or suspected
       carcinogens in their products and/or processes, even though it was reasonably

foreseeable that persons, such as Plaintiff, would inhale, ingest or otherwise absorb the carcinogenic contaminants when working near the Toxic Plume created and caused by the Region Defendants, in the Region or within a two-mile radius of the Region Defendants industrial facilities, refineries, terminals, storage facilities, industrial processes, and or other associated equipment/operations, as set forth herein, and currently or historically owned by the Region Defendants;

b.  The Region Defendants included Benzene, PCBs, and/or known or suspected carcinogens in their products and processes, even though the Region Defendants knew or should have known that such chemicals and contaminants would have a toxic, poisonous, carcinogenic, and highly deleterious effect upon the health and welfare of persons ingesting or otherwise absorbing the carcinogen, such as Plaintiff, when near the Toxic Plume created and caused by the Region Defendants, and/or in the Region or in close proximity to the industrial facilities, refineries, terminals, storage facilities, industrial processes, and/or other associated equipment/operations, as set forth herein, and currently or historically owned by the Region Defendants;

c.  The Region Defendants included Benzene, PCBs, and/or known or suspected carcinogens in their products and processes when they knew or should have known that adequate substitutes for the carcinogenic contaminants were available;

d.  The Region Defendants failed sufficiently to test, monitor and research the human health effects of Benzene, Benzene -containing, PCBs, PCB-containing, and/or known or suspected carcinogens or processes on those working near the Toxic Plume and/or in the Region or in close proximity to where such chemicals or contaminants were being used, when the Region Defendants knew or should have known that Benzene, PCBs, and/or known or suspected carcinogens would have a toxic, poisonous, and highly deleterious effect upon the health of persons inhaling, ingesting or otherwise absorbing the carcinogens;

e.  The Region Defendants knew or should have known to sufficiently test, monitor, research, and maintain data and records concerning those working near the Toxic Plume and/or in the Region or in close proximity to the industrial facilities, refineries, terminals, storage facilities, industrial processes, and or other associated equipment/operations, as set forth herein, and currently or historically owned by the Region Defendants, regarding the human health effects of Benzene, PCBs, and/or known or suspected carcinogenic products or processes, to determine and better understand the hazards to which persons such as Plaintiff would be exposed while near such products and processes;

f.  The Region Defendants knew or should have known to alert or warn Plaintiff and other persons near the Toxic Plume and/or in the Region or in close proximity to the industrial facilities, refineries, terminals, storage facilities, industrial processes, and or other associated equipment/operations, as set forth herein, and currently or historically owned by the Region Defendants, of the likelihood of Benzene, PCBs, and/or known or suspected carcinogenic contamination in the air, soil, water, and groundwater;

g.  The Region Defendants knew or should have known to provide sufficient
warnings to Plaintiff and other persons working near the Toxic Plume and/or in
the Region or in close proximity to the industrial facilities, refineries, terminals,
storage facilities, industrial processes, and or other associated
equipment/operations, as set forth herein, and currently or historically owned
by the Region Defendants, concerning the dangers of inhaling, ingesting or
otherwise absorbing Benzene, PCBs, and/or known or suspected carcinogens;

h.  The Region Defendants knew or should have known to recommend sufficient
engineering controls or safeguards to reduce and/or eliminate Benzene, PCBs,
and/or known or suspected carcinogen exposure to Plaintiff and other persons
working near the Toxic Plume and/or in the Region or in close proximity to the
industrial facilities, refineries, terminals, storage facilities, industrial processes,
and or other associated equipment/operations, as set forth herein, and currently
or historically owned by the Region Defendants;

i.  The Region Defendants knew or should have known to recall and/or cease using
Benzene, PCBs, and/or known or suspected carcinogenic products and
processes which they had designed, manufactured, sold, distributed, or were
currently using at the industrial facilities, refineries, terminals, storage facilities,
industrial processes, and or other associated equipment/operations, as set forth
herein, and currently or historically owned by the Region Defendants, and the
Region Defendants knew or should have known to take reasonable and prompt
action to contain and/or clean up Benzene, PCBs, and/or known or suspected
carcinogenic pollutants that had been released into the environment;

j.  The Region Defendants knew or should have known to comply with state and
federal regulations regarding the handling, storage, and/or removal of Benzene,
PCBs, and/or known or suspected carcinogenic pollutants, including being cited
numerous times for violating Illinois and United States environmental
protection laws for releases of Benzene, PCBs, and/or known or suspected
carcinogens, and other dangerous chemicals;

k.  The Region Defendants knew or should have known about the presence of
pollutants such as Benzene, PCBs, and/or known or suspected carcinogenic
products, processes, and/or contaminants that were released into the air, and
spilled, leaked, or dumped into the soil and ground, and discharged into the
surface/ground water, and they negligently failed to take necessary steps to
prevent such carcinogenic pollutants from leaving the borders of their premises
or even to contain such carcinogenic pollutants within its facility boundaries;

l.  The Region Defendants negligently failed to properly maintain their Benzene,
PCBs, and/or known or suspected carcinogens, and other chemical storage
facilities, Benzene pipelines, and petrochemical pipelines so as to prevent the
leaking or release such chemicals and contaminants into the ground,
groundwater in and around the Region; and/or,

m.  The Region Defendants negligently failed to properly clean up or otherwise
address any spills or leaks of Benzene, PCBs, and/or known or suspected
carcinogens or to prevent these substances from moving through the air, ground
and groundwater in and around the industrial facilities, refineries, terminals,
storage    facilities,    industrial    processes,    and    or    other    associated

equipment/operations, as set forth herein, and currently or historically owned by the Region Defendants and/or in and around the Region.

72.     As a direct and proximate result of the carelessness and negligence of the Region Defendants, Plaintiff was caused to be exposed to, inhaled, ingested, and/or otherwise absorb Benzene, PCBs, and/or known or suspected carcinogens and contaminants, thereby causing Plaintiff to develop Multiple Myeloma and Colon Cancer.

73.     That as a direct and proximate result of the carelessness and negligence of the Region Defendants, Plaintiff was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed Benzene, PCBs, known or suspected carcinogens, and/or other contaminants, thereby causing Plaintiff to incur medical bills, pain and suffering, a shortened life expectancy, and mental anguish.

74.     That as a direct and proximate result of the carelessness and negligence of the Region Defendants, Plaintiff was caused to be exposed to, inhaled, ingested, and/or otherwise absorbed Benzene, PCBs, known or suspected carcinogens, and/or other contaminants, thereby causing the impairment of Plaintiff's ability to make a living, which has been severely and permanently damaged.

75.     As a direct and proximate result of the carelessness and negligence of the Region Defendants, Plaintiff was caused to be exposed to, inhaled, ingested, had direct contact with, and/or otherwise absorbed Benzene, PCBs, and/or other known or suspected carcinogens; Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical, pharmaceutical, and other health care services necessary for the treatment of her Benzene, PCB, and/or chemical carcinogen-related-disease and conditions, and to alleviate the pain, suffering, mental anguish, and physical disability caused by her injury; Plaintiff has experienced great physical pain and mental anguish as a result of said exposure, inhalation, ingestion and absorption;

that as a further result of her Benzene, PCB, and/or chemical carcinogen induced diseases and

conditions, Plaintiff has a shortened life span; that as a further result of her Benzene, PCB, and/or

chemical carcinogen induced diseases and conditions, Plaintiff has been hindered and prevented

from pursuing her normal course of employment, thereby losing large sums of money which

otherwise would have accrued to Plaintiff.

WHEREFORE, Plaintiff, Andrea Rucker, prays this Court to enter judgment in her favor

and against the Region Defendants, jointly and severally, to award compensatory damages, and

costs incurred prosecuting this matter in a fair and reasonable amount in excess of Fifty Thousand

Dollars ($50,000.00) and to grant such other and further relief as this Court deems appropriate.

## COUNT II – STRICT LIABILITY
### (ULTRA HAZARDOUS ACTIVITY/FAILURE TO WARN)
### *VS. REGION DEFENDANTS*

76.    Plaintiff incorporates by reference all paragraphs above as if fully set forth herein.

77.    The Region Defendants' activities caused releases of Substances from the Release

Sites into the environment.

78.    The Releases:

    a.  Created, and still create, a high degree of risk of harm to others, including Plaintiff;
    b.  Created, and still create, a risk involving likelihood that the harm would be great to Plaintiff and others within the surrounding community;
    c.  Created, and still create, a risk of harm that could not be eliminated by Plaintiff through the exercise of reasonable care;
    d.  Were not, and are not, matters of common usage;
    e.  Were and are inappropriate to the place that they were and are being carried on, in that they constituted and continue to constitute a non-natural use of the Release Sites which imposed and continues to impose an unusual and extraordinary risk of damage and injury to the residents of adjacent communities, such as Plaintiff, and those working within the Region, such as Plaintiff; and/or,
    f.  The usefulness and value of the Substances manufactured and/or released at the Release Sites were far outweighed by their danger to the residents of the

adjacent communities and workers, such as Plaintiff. This is true, in part, because there were and are suitable substitutes for the toxic chemicals manufactured at the Region Defendants' Facilities and/or economical and reasonable safeguards that could have prevented or mitigated the resulting hazards from all of the Release Sites.

79.    The Substances released from the Release Sites into the environment constituted and continue to constitute a hidden hazard not readily discernible by the general public, and Plaintiff did not know or have reason to know about this hazard.

80.    In releasing Substances from the Release Sites into the environment, the Region Defendants were engaged in ultra-hazardous activities.

81.    As a direct and proximate result of the ultra-hazardous activities described above on the part of the Region Defendants, Plaintiff was caused to be exposed to, inhaled, ingested, had direct contact with, and/or otherwise absorbed Benzene, PCBs, and/or other known or suspected carcinogens; Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical, pharmaceutical, and other health care services necessary for the treatment of her Benzene, PCB, and/or chemical carcinogen-related-disease and conditions, and to alleviate the pain, suffering, mental anguish, and physical disability caused by her injury; Plaintiff has experienced great physical pain and mental anguish as a result of said exposure, inhalation, ingestion and absorption; that as a further result of her Benzene, PCB, and/or chemical carcinogen induced diseases and conditions, a shortened life span; that as a further result of her Benzene, PCB, and/or chemical carcinogen induced diseases and conditions, Plaintiff has been hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to Plaintiff.

WHEREFORE, Plaintiff, Andrea Rucker, prays this Court to enter judgment in her favor and against the Region Defendants, jointly and severally, to award compensatory damages, and

costs incurred prosecuting this matter in a fair and reasonable amount in excess of Fifty Thousand

Dollars ($50,000.00) and to grant such other and further relief as this Court deems appropriate.

## COUNT III – CIVIL CONSPIRACY
### *VS. REGION DEFENDANTS*

82.    Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

83.    Region Defendants agreed to, and did in fact, suppress general and scientific

knowledge of the hazards of the aforementioned toxic chemicals, especially PCBs, and toxic

waste, and acted together for the purpose of accomplishing an unlawful purpose by an unlawful

means, and/or a lawful purpose by unlawful means, and/or an unlawful purpose by lawful means.

84.    Pursuant to said agreements, the Region Defendants together committed overt

unlawful acts in furtherance of their conspiracy and knowingly and voluntarily participated in their

common scheme to commit unlawful acts in an unlawful manner, and Region Defendants

understood the general objectives of the conspiratorial scheme, accepted the general objectives,

and agreed to do their part to further those objectives.

85.    Region Defendants knowingly and voluntarily agreed to suppress, minimize,

discredit, deceive, manipulate, silence, and/or falsify scientific data or knowledge of the hazards

of the aforementioned toxic chemicals and waste, especially PCBs, that they knew were dangerous

to the general public and to persons, such a Plaintiff, living and working in and around the Region.

86.    Region Defendants knowingly and voluntarily manipulated and misstated the

results of scientific studies to conceal and suppress information to the general public and those,

such as Plaintiff, living and working within the Region concerning the hazards of the

aforementioned toxic chemicals and waste to the those living and working in and around their

facilities.

87.     As a direct and proximate result of their agreement and their foregoing wrongful

acts in furtherance thereof, neither the general public nor Plaintiff was aware of the dangers of

living and working in and around the area of the Region Defendants' facilities and was thereby

exposed to, inhaled, ingested, or otherwise absorbed toxic chemicals in sufficient amounts to cause

or contribute to her development of Multiple Myeloma and Colon Cancer, which has compelled

her to expend and become liable, now and in the future, for large sums of monies for hospital,

medical, pharmaceutical, and other health care services necessary for the treatment of her Benzene,

PCB, and/or chemical carcinogen-related-disease and conditions, and to alleviate the pain,

suffering, mental anguish, and physical disability caused by her injury; experience great physical

pain and mental anguish, suffer a shortened life span or expectancy; and be hindered and prevented

from pursuing her normal course of employment, thereby losing large sums of money that

otherwise would have accrued to Plaintiff.

WHEREFORE, Plaintiff, Andrea Rucker, prays this Court to enter judgment in his favor

and against Region Defendants, jointly and severally, to award compensatory damages in excess

of Fifty Thousand Dollars $50,000.00 and costs incurred prosecuting this matter, and to grant such

other and further relief as this Court deems appropriate.

### COUNT IV - NEGLIGENCE *PER SE*
### *VS. REGION DEFENDANTS*

88.     Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

89.     Region Defendants violated state and/or other applicable laws and regulations in

their illegal management and mismanagement of hazardous materials, specifically, but not limited

to, 415 ILCS 5/21, 5/12, *et. al*.

90.     The Region Defendants were negligent *per se* in the following respects:

a.  Negligently designing, constructing, operating and maintaining their facilities;
b.  Failing to use reasonable care in the handling and use of hazardous pollutants used, stored or created at their facilities;
c.  Negligently permitting hazardous pollutants to be carried by soil, surface water, groundwater and air from their facilities and onto the adjacent residential neighborhoods;
d.  Negligently failing to warn Plaintiffs of the potential for physical harm or death from exposure to pollutants released into the environment from their facilities even though Defendants knew or should have known of their toxic effects; and/or,
e.  Failing to take appropriate measures to halt the migration or release of pollutants and failing to clean up the pollutants discharged.

91.     As a result of Region Defendants' negligent, *per se*, operations of their facilities, including their pollution, production, disposal, and/or handling of toxic chemicals, they dumped, discharged, and/or otherwise allowed, in enormous quantities, of hazardous pollutants to escape from their facilities and into the air, ground, plume, surface water, and/or groundwater was, and continues to be, in direct violation of numerous state, or other, environmental statutes and regulations.

92.     The negligence, *per se*, of the Region Defendants directly and proximately caused or contributed to cause Plaintiff to develop Multiple Myeloma and Colon Cancer and thereby suffer damages, injuries, and losses, including but not limited to, medical bills and expenses, lost wages, and pain and suffering now and in the future.

WHEREFORE, Plaintiff, Andrea Rucker, prays this Court to enter judgment in his favor and against Region Defendants, jointly and severally, to award compensatory damages in excess of Fifty Thousand Dollars $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

### COUNT V – WILLFUL AND WANTON MISCONDUCT
### *VS. REGION DEFENDANTS*

93.     Plaintiff incorporates by reference the above paragraphs as fully stated herein.

94.     Region Defendants had a duty to refrain from willful and wanton acts or omissions that would harm Plaintiff.

95.     Region Defendants breached their respective duties to Plaintiff by engaging in the foregoing acts or omissions in a willful and wanton manner.

96.     Region Defendants knew that their acts and omissions created a substantial risk that persons such as the Plaintiff would suffer illness as a result and, therefore, carried out the same with complete indifference to, and/or conscious disregard for, the life, health, and welfare of Plaintiff.

97.     As a direct and proximate result of Region Defendants' foregoing willful and wanton acts or omissions, Plaintiff was unaware of the dangers of living and working in and around the area of the Region Defendants' facilities and was thereby exposed to, inhaled, ingested, or otherwise absorbed toxic chemicals in sufficient amounts to cause or contribute to her development of Multiple Myeloma and Colon Cancer, which has compelled her to expend and become liable, now and in the future, for large sums of monies for hospital, medical, pharmaceutical, and other health care services necessary for the treatment of her Benzene, PCB, and/or chemical carcinogen-related-disease and conditions, and to alleviate the pain, suffering, mental anguish, and physical disability caused by her injury; experience great physical pain and mental anguish, suffer a shortened life span or expectancy; and be hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money that otherwise would have accrued to Plaintiff.

WHEREFORE, Plaintiff, Andrea Rucker, prays this Court to enter judgment in his favor and against Region Defendants, jointly and severally, to award compensatory damages in excess of Fifty Thousand Dollars $50,000.00 and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

## COUNT VI – NEGLIGENCE
### *VS. ALTON & SOUTHERN RAILWAY*

98.     Plaintiff incorporates by reference paragraphs 1, 12, 14-20, and 24-27 above as if fully set forth herein.

99.     While living and working in the Region and in close proximity to A&S locomotives and rail yard, Plaintiff was constantly exposed to running A&S locomotives and operating rail yard, which caused her to inhale, ingest, otherwise breathe in diesel exhaust, soot, and/or fumes, which are known to cause or contribute to the development of Multiple Myeloma and Colon Cancer, emanating from A&S locomotives and rail yard located in the Region within St. Clair County, Illinois.

100.    It was the duty of A&S to use ordinary care to provide Plaintiff with a reasonably safe place in which to live and work around and/or warn those in close proximity, such as Plaintiff, about the dangers of living and working in close proximity to diesel exhaust, soot, and/or fumes.

101.    A&S breached its duty to Plaintiff and was negligent in one or more of the following ways:

  a.  Failed to maintain and ensure its locomotives had proper, working, and adequate safeguards or diesel/ engine filtration systems, the failure of which allowed cancer causing substances to accumulate in and around where Plaintiff lived and worked;
  b.  Failed to utilize lower emissions fuel such as bio-diesel, which allowed cancer causing substances to accumulate in and around where Plaintiff lived and worked; and/or,
  c.  Failed to mandate cleaner burning engines from the locomotive manufacturers which allowed cancer causing substances to accumulate in train compartments at toxic levels.

102.    As a direct and proximate result of said exposure, inhalation, ingestion, and/or absorption caused by the foregoing acts or omissions of A&S, Plaintiff developed Multiple Myeloma and Colon Cancer and has been disabled and disfigured, compelled to expend and

become liable for large sums of money for hospital, medical, and other healthcare services necessary for the treatment of such cancers, caused her to experience great physical pain and mental anguish, a shortened life span, has been hindered and prevented from pursuing her normal course of employment, thereby losing large sums of money which otherwise would have accrued to Plaintiff, and will continue to suffer and incur the foregoing damages in the future.

WHEREFORE, Plaintiff, Andrea Rucker, prays this Court to enter judgment in her favor and against Defendant, Alton & Southern Railway, jointly and severally, to award compensatory damages, and costs incurred prosecuting this matter in a fair and reasonable amount in excess of Fifty Thousand Dollars ($50,000.00) and to grant such other and further relief as this Court deems appropriate.

### COUNT VII - NUISANCE
### *VS. REGION DEFENDANTS*

103.    Plaintiff incorporates by reference the paragraphs above as if fully set forth herein.

104.    The general public, including the Plaintiff, had, and continue to have, a right to have the environment of their communities free from contamination by substances manufactured, dumped, and/or released by all Defendants.

105.    All Defendants' releases of substances into the environment substantially and unreasonably interfered with, and continues to substantially interfere with, the lives and health of the general public, including Plaintiff.

106.    All Defendants' releases of substances into the environment proximately caused, and continues to proximately cause, damages and injury to the general public, including Plaintiff, in the form of life-threatening diseases.

107.    All Defendants' past and continuing releases of toxic substances into the environment constitute a continuing, and prior, nuisance.

WHEREFORE, Plaintiff, Andrea Rucker, prays this Court to enter judgment in his favor and against all Defendants, jointly and severally, to award compensatory damages in excess of Fifty Thousand Dollars ($50,000.00) and costs incurred prosecuting this matter, and to grant such other and further relief as this Court deems appropriate.

Respectfully Submitted,

**GIANARIS TRIAL LAWYERS, LLC**

By: _/s/ Joshua A. Edelson_____
     Ted N. Gianaris, IL #6237156
     Joshua A. Edelson, IL #6326848
     One Court Street
     Alton, IL 62002
     (618) 619-0010
     (618) 259-2251 (Fax)
     tgianaris@lawforpeople.com
     jedelson@lawforpeople.com
     *Attorneys for Plaintiff*

FEB 1 4 2023